## Samuel B. Hunt et al. versus Elias O. Holton.

The owner of a horse mortgaged it and delivered possession to the mortgagee. Afterwards the mortgager assigned his remaining interest to C, and became the servan of C, and the mortgagee permitted C to make use of the horse. C and the mortgager afterwards delivered the horse to S, to be depastured. Afterwards, on July 10th, the mortgagee conveyed his right to the four plaintiffs, and on the same day, C conveyed his right of redemption to three of them. On July 13th, the horse was attached while in the hands of S, in a suit on a note against C and the mortgager, brought in the name of the payee but by the direction and for the benefit of the indorser, the defendant in the present action, and was sold on the execution in that suit, and purchased by the present defendant. In a short time after the attachment, S was notified, by a letter from C, that the horse was sold to the plaintiffs, and he was requested to deliver it to them ; of which he informed the nominal plaintiff in that suit ; but no such delivery was made. It was *held* : —

That the delivery to the mortgagee would avail his assignees, as against any person claiming through C : —

That the legal title to the horse was in the four plaintiffs and the equitable right to redeem in three of them, no right remaining in C : —

That the defendant could not maintain his title as a *bonâ fide* purchaser at a sale on execution, for he must be presumed to be conusant of the facts known to the nominal judgment creditor : —

That the defendant was liable in trover for the horse : —

That the three plaintiffs, who had a legal and an equitable title, having joined in the action with the fourth, the defendant, who was a stranger, claiming merely as a creditor of C, could not object that the fourth had only a legal title and was therefore improperly joined in the action : —

And that the original taking by the defendant was tortious, and therefore trover might be sustained against him without any previous demand of the horse.

Trover for a horse. Plea, the general issue.

The parties stated a case.

The plaintiffs, to support their action and prove their title to the horse, produced a deed, dated August 21, 1828, from one Jones to one Blanchard, by which the former conveyed to the latter the horse in question, with other property, upon condition that on payment of his note to Blanchard for $982·71, the conveyance should be void ; and at the same time the horse was delivered to Blanchard.

Blanchard had previously owned the horse jointly with Jones, and they as partners occupied a stable in which the horse was kept at livery. Previously to the conveyance the partnership was dissolved, and Blanchard had sold his interest in the property, including the horse, to Jones; and Jones alone thereafter occupied the stable and possessed the property as his own.

On the 1st of November ensuing Jones sold the horse to Clark, who then took the stable in his own name, together with the horse and the other property, and hired Jones as a laborer in the stable. Blanchard knew nothing of this until some days after, and when it came to his knowledge he made no objection.

The stable continued to be managed by Clark in his own name, and the horse was let for hire and employed as usual, without any interference, until June 1829, when Clark and Jones delivered it to one Shorey, to be kept ·at pasture in St. Johnsbury, Vermont. Shorey deposes, that he understood from Clark and Jones, that the horse was theirs, and that they authorized him to sell or exchange it. Jones testified that *he* did not authorize Shorey to sell or exchange it, but he was not present at a previous interview between Clark and Shorey, and did not know what was said between them. He also stated that he did not inform Shorey that Blanchard had any right in the horse. ·

On the 10th of July 1829, Blanchard assigned his deed and note before mentioned, to the plaintiffs; and on the same day Clark conveyed to three of the plaintiffs, (there being four in all,) his right in the horse and in a part of the other property originally conveyed by the deed to Blanchard. The property was then delivered accordingly to the plaintiffs, except the horse, which was in Vermont.

On the 13th of the same July the horse was attached in Vermont, at the suit of one Barker, upon a joint note of Clark and Jones, which note was the property of the defendant in this action; and that suit was brought by his direction and for his benefit. Judgment was recovered against the defendants in that suit, and the horse was sold to satisfy the execution,

Hunt
*v.*
Holton.

agreeably to the laws of Vermont. The present defendant was the purchaser.

About three or four days after the attachment, Shorey received a letter from Clark, informing him that the horse had been sold to the plaintiffs, and requesting him to deliver it. Of this letter he *soon after informed* Barker ; the horse however was not delivered.

If these facts showed a sufficient title and right to recover, in the plaintiffs, judgment was to be rendered in their favor for 125 dollars and interest from January 1, 1832 ; otherwise the plaintiffs were to be nonsuited.

*Oct. 19th.*

*Hoar* and *Gordon* for the plaintiffs.

*T. Fuller*, for the defendant, cited to the point that the sale by Jones, the special bailee, to Clark, a *bonâ fide* purchaser without notice, divested the title of Blanchard, Bac. Abr. *Trover, C* ; 2 Wms's Saund. 47 *b*, note 1 ; Bro. Abr. *Trespass, pl.* 216, 295 ; that the notice from Clark to Shorey would not avail the plaintiffs, being after the attachment, *Tuxworth v. Moore*, 9 Pick. 497 ; *Lanfear v. Sumner*, 17 Mass. R. 110 ; that the sale to Clark by Jones, was a conversion by Jones, 6 Bac. Abr. 680, *Trover, B*, cites *Syeds v. Hay*, 4 T. R. 264 ; that Blanchard being in fact divested of the property, by the tort either of Jones alone or of Jones and Clark, he had only a chose in action, which he could not so assign as to enable his assignees to sue in their own names, *Day v. Whitney*, 1 Pick. 503 ; *Palmer's case*, 5 Co. 24 ; and that there was no evidence of a conversion by the defendant, no demand having been made upon him for the horse, Bac. Abr. *Trover, D* ; *Ross v. Johnson*, 5 Burr. 2825 ; 1 Chit. Pl. 153 ; *Baldwin v. Cole*, 6 Mod. 212.

*April term*
*1833,*
*at Concord.*

PUTNAM J. delivered the opinion of the Court. The statement of the facts in the order of time in which they happened, will lead to a clear understanding and proper decision of the case.

Before the 21st of August 1828, Blanchard and Jones owned the horse as tenants in common. Blanchard conveyed his part to Jones, who then became the sole owner. On the 21st of August 1828, Jones mortgaged the property

to Blanchard and delivered the possession accordingly. So Blanchard acquired the legal title, and Jones held the right of redemption. Afterwards, on the 1st of November 1828, Jones assigned his right to Clark, who thereby became entitled to the right of redemption ; and Jones from thenceforth ceased to have any right at all to the horse. He was then employed by Clark as a servant about his affairs. Clark, however, was permitted to use the horse, by the consent of Blanchard, the mortgagee. Afterwards, in June 1829, Clark and Jones delivered the horse to Shorey, to be pastured in Vermont.

There is some contradictory evidence as to the fact, whether they did or did not authorize Shorey to sell or exchange the horse. And it is not material to settle it, for Shorey never did either sell or exchange it. And, besides, it is not stated that Blanchard ever assented or was a party to that transaction.

Afterwards, on the 10th of July 1829, Blanchard the mortgagee conveys his right to the four plaintiffs, and Clark on the same day conveys his right of redemption to three of the plaintiffs. But the name of E. Thorndike, one of the plaintiffs, is not in the assignment which Clark made. From thenceforth Clark ceased to have any right to the property. The legal title then vested in all the plaintiffs, and the right to redeem came to three of them. And those three, by joining E. Thorndike with them in this suit, admit that he, by some arrangement between themselves, (with which we cannot see that Clark has any thing to do,) now claim the property. As between the plaintiffs and Clark, therefore, it would seem perfectly clear that they had the legal as well as the equitable title, and Clark, no right at all.

Afterwards, on the 13th of July 1829, the horse was attached, while he was under the care of Shorey to be pastured, at the suit of Barker, (which was carried on *for the use of the defendant Holton,*) as the property of Clark and Jones ; both of whom, as we have seen, had before ceased to have any interest in it.

In three or four days afterwards, Shorey (who received the horse to be pastured) was notified by a letter from Clark,

that the horse was sold to the plaintiffs, — and was requested to deliver it to him ; and soon afterwards Shorey informed the judgment creditor, of the contents of that letter. The horse was not delivered accordingly ; but was, after this notice, sold to the defendant on the execution which issued on the judgment, which belonged to the defendant.

It is not suggested that any fraud was intended on the part of Blanchard, Clark, Jones or the plaintiffs.

It is contended for the defendant, that as the horse was attached as the property of Clark and Jones, the attachment would be good if the horse belonged only to Clark. But, as before stated, it belonged to neither.

It was said that according to Brooke, *Tresp.* 216, 295, a bailee may sell and deliver to a stranger, and that the bailor cannot maintain trespass. If that were admitted, it could not avail, because the bailee has not sold to anybody.

It is said that there are four plaintiffs, and three only are interested, and so the four cannot recover. But we have seen that the four had the legal title from the mortgagee, and the three who sue with the fourth, had the equitable title of the mortgager, passing through Clark. It is not for Clark or any one claiming under him to make this objection.

It is contended for the defendant, that there has been no delivery of the property to the plaintiffs, and therefore they cannot maintain this action. We have seen that there was an actual delivery of the property mortgaged by Jones to Blanchard, and that the legal title was in the latter. He might legally convey it to the plaintiffs, as against a stranger, and the legal title would vest in the plaintiffs, and would draw the possession to the title. Thus in 2 Saund. 47 *a*, note 1, it is said, "if A. in London gives J. S. his goods at York, and another takes them away before J. S. obtains actual possession, J. S. may maintain trover or trespass for them." Serjeant Williams cites Bro. *Trespass, pl.* 303, where it is said, if a *stranger* takes them ; which undoubtedly was intended by Sergeant Williams by the word *another,* in that connexion. Now the judgment creditor, and the officer, and the defendant are *strangers,* as well to Blanchard as to the plaintiffs. If the party who caused the attachment to be

made had been a creditor of Blanchard, and had attached the property before a delivery of it had been made to the plaintiffs, his title would have prevailed. *Lanfear* v. *Sumner*, 17 Mass. R. 112. But the attachment was not against Blanchard, but against Jones and Clark. The attaching creditor is a stranger, who has no right at all to interfere in regard to the conveyance from Blanchard to the plaintiffs.

And in regard to Clark, he, as the assignee of the right to redeem, had no attachable interest in the property. This Court held in *Badlam* v. *Tucker*, 1 Pick. 399, that it is only by statute that equities or rights to redeem are attachable by ordinary process, and no statute has authorized the attachment of such interest in personal property. It is suggested in that case, that a creditor might perhaps remove the incumbrance and then attach. But there has been no such act done by the defendant. And until payment or tender of payment, the creditor of the mortgager could not have any remedy by attachment or execution. The seizure on the execution was, therefore, a tortious act. And that furnishes an answer to another objection raised by the counsel for the defendant, viz., that there should have been a demand made upon the defendant before the commencement of this action, and that without a demand and refusal there is no evidence to prove the conversion. In *Badlam* v. *Tucker*, 1 Pick. 397, this Court held that an unlawful taking amounts to a conversion, and renders a demand unnecessary. See *Tinkler* v. *Poole*, 5 Burr. 2657, where Lord *Mansfield* held that the unlawful seizing and carrying away of the goods was " a wrongful conversion." *S. C.* 3 Wils. 146.

It was further contended that the defendant was a *bonâ fide* purchaser of the horse at a sheriff's sale on an execution. But we must presume the defendant to have been conusant of all the facts communicated to the judgment creditor, because the suit was prosecuted and carried on for the benefit of the defendant. The officer must be considered as his servant and acting under his orders and direction. His purchase under such circumstances could not divest the plaintiffs' legal title to the property so unlawfully seised by the officer.

19 *

Hunt
*v.*
Holton.

It is, therefore, the opinion of the Court, that the plaintiffs have shown a sufficient title and right to recover in this action, and that judgment shall be rendered for the plaintiffs for 125 dollars, with interest from the 1st of January 1832 to this time, according to the agreement in the case.